LAWYERS FOR CLEAN WATER, INC.
Drevet Hunt (Bar No. 240487)
Layne Friedrich (Bar No. 195431)
        Email:  drev@lawyersforcleanwater.com
        Email:  layne@lawyersforcleanwater.com
1004-A O'Reilly Avenue
San Francisco, California 94129
Telephone:  (415) 440-6520
Facsimile:  (415) 440-4155


LOS ANGELES WATERKEEPER
Arthur Pugsley (Bar No. 252200)
Melissa Kelly (Bar No. 300817)
        Email: arthur@lawaterkeeper.org
        Email:  melissa@lawaterkeeper.org
120 Broadway, Suite 105
Santa Monica, California 90401
Telephone:  (310) 394-6162
Facsimile:  (310) 394-6178

*Attorneys for Plaintiff*
LOS ANGELES WATERKEEPER

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit corporation, <br><br> Plaintiff, <br> vs. <br><br> ALLAN COMPANY, INC., a California corporation, <br><br> Defendant. | Civil Case No. 2:16-cv-07773-R (ASx) <br><br> **CONSENT DECREE; ORDER** <br><br> **(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*)** |

# CONSENT DECREE

The following Consent Decree is entered into by and between Plaintiff Los Angeles Waterkeeper ("Waterkeeper" or "Plaintiff"), and Defendant Allan Company, Inc. ("Allan Co" or "Defendant"). Waterkeeper and Allan Co, each referred to as a "Settling Party" or "Party," and are collectively referred to as the "Settling Parties" or the "Parties."

Cedarwood-Young Company ("Cedarwood"), a California corporation doing business as Allan Company is also signatory to this Consent Decree, and agrees that it will carry out Defendant's obligations under this Consent Decree. Nonetheless, Allan Company, Inc. will be the responsible party in the event of any failure to fulfill Defendant's obligations under this Consent Decree.

**WHEREAS,** Waterkeeper is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Santa Monica, California;

**WHEREAS,** Waterkeeper asserts it is dedicated to the preservation, protection, and defense of the rivers, creeks, and coastal waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS**, Waterkeeper alleges that Defendant Allan Company, Inc. is the owner and operator of the facility located at 145 W. Duarte, Monrovia, California 91016 (referred to as the "Monrovia Facility");

**WHEREAS**, Waterkeeper asserts that it has approximately 3,000 members who live and/or recreate in and around the Los Angeles River watershed and Los Angeles area waterbodies receiving discharges from the Monrovia Facility;

**WHEREAS,** discharges from the Monrovia Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ, and by Order No. 2014-0057-DWQ ("Storm Water

Permit") and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA");

**WHEREAS**, on July 22, 2016, Waterkeeper sent Defendant, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board"), and the Los Angeles Regional Water Quality Control Board ("Regional Board") a notice of intent to file suit ("Notice Letter") under Sections 505(a) and (b) of the Clean Water Act, 33 U.S.C. §§ 1365(a) and (b). The Notice Letter alleged violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the Storm Water Permit at the Monrovia Facility;

**WHEREAS**, on October 19, 2016, Waterkeeper filed a complaint against Defendant in the United States District Court, Central District of California (Case No. 2:16-cv-7773 R (ASx)), alleging violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and alleging violations of the Storm Water Permit at the Monrovia Facility ("Complaint");

**WHEREAS**, Waterkeeper alleges Defendant to be in violation of the substantive and procedural requirements of the Storm Water Permit and the Clean Water Act with respect to the Monrovia Facility;

**WHEREAS**, Defendant denies all allegations in the Notice Letter and Complaint;

**WHEREAS**, Waterkeeper and Defendant have agreed that it is in the Settling Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint without further proceedings;

**WHEREAS**, all actions taken by the Settling Parties pursuant to this Consent Decree shall be made in compliance with all applicable federal and state laws and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS**

**FOLLOWS:**

1.      The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a);

2.      Venue is appropriate in the Central District of California pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Monrovia Facility is located within this District;

3.      The Complaint asserts claims based upon Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1);

4.      Plaintiff has standing to bring this action;

5.      The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the term of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

**I.      OBJECTIVES**

6.      It is the express purpose of Waterkeeper to further the objectives set forth in the Clean Water Act.

7.      It is the express purpose of Allan Co to continue to ensure compliance with the Clean Water Act.

8.      It is the express purpose of the Settling Parties to resolve all issues alleged by Waterkeeper in the Notice Letter and its Complaint.

9.      In light of these objectives and as set forth fully below, Defendant agrees, *inter alia*, to comply with the provisions of this Consent Decree, the requirements of the Storm Water Permit, and all applicable provisions of the CWA.

**II.      AGENCY REVIEW AND TERM OF CONSENT DECREE**

10.      Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (collectively "Federal Agencies") within three (3) days of the final signature of the Settling Parties for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) days after receipt by both agencies, as

evidenced by written acknowledgement of receipt by the agencies or the certified return receipts, copies of which shall be provided to Defendant. In the event that the Federal Agencies object to entry of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time. If the parties are unable to reach agreement to modify this Consent Decree to resolve the issues raised by the Federal Agencies, and this Consent Decree as so modified is not approved by the Federal Agencies, this Consent Decree shall be of no force and effect.

11.    The term "Effective Date" as used in this Consent Decree shall mean the last day for the Federal Agencies to comment on the Consent Decree, i.e., the forty-fifth (45th) day following the Federal Agencies' receipt of the Consent Decree, or the date on which the Federal Agencies provide notice that they require no further review, whichever occurs earlier.

12.    Subject to paragraph 13, this Consent Decree shall terminate upon the date of the first of the following events to occur (such date shall be referred to as the "Termination Date"):

   12.1.  The cessation of industrial operations by Defendant at the Monrovia Facility, and acceptance and approval of a corresponding Notice of Termination of Coverage under the Storm Water Permit by the Regional Board;

   12.2.  Beginning with the 2017-2018 Reporting Year,[1] monitoring data spanning at least two Reporting Years from five (5) consecutive storm water samples from each Reporting Year collected from the Monrovia Facility Discharge Location(s), demonstrate compliance with the Table 1 Numeric Limits. The Monrovia Facility Discharge

---

[1] Reporting Year is defined as from July 1 – June 30.

Location(s) are identified on the December 2016 Monrovia Site Map, which is attached as **Exhibit A**;

12.3.  If Allan Company meets the requirements for Dischargers Claiming "No Discharge" through the Notice of Non-Applicability ("NONA") and obtains approval of a Notice of Termination of Coverage under the Storm Water Permit by the Regional Board; or

12.4.  June 30, 2021.

13.    Defendant shall notify Plaintiff ninety (90) days prior to seeking termination under subparagraph 12.1, 12.2, or 12.3. In the absence of any ongoing, unresolved dispute, this Consent Decree shall terminate on the Termination Date. If, however, there is a prior ongoing, unresolved dispute regarding Defendant's compliance with this Consent Decree, then the Consent Decree will terminate upon final resolution of the dispute. If there is such a dispute, Plaintiff shall comply with the Dispute Resolution procedures set forth in Section IV, below. If the dispute cannot be resolved through the informal Dispute Resolution procedure, Plaintiff shall invoke formal Dispute Resolution identifying the issue(s) in dispute in a motion filed with the Court prior to the Termination Date. Invoking the Dispute Resolution procedures shall extend the Termination Date until the Court determines the dispute has been resolved and thereupon dismisses the case or, alternatively, if the Settling Parties file a stipulation for dismissal.

## III.    COMMITMENTS OF THE SETTLING PARTIES

### A.    Storm Water Pollution Control Best Management Practices.

14.    In addition to maintaining the current structural and non-structural Best Management Practices ("BMPs") described in the Storm Water Pollution Prevention Plan ("SWPPP") for the Monrovia Facility, dated December 2016, Defendant shall (1) develop and implement BMPs identified herein, and (2) develop and implement additional BMPs necessary to comply with the provisions of this Consent Decree and the Storm Water Permit, including but not limited to those that achieve the Best Available

Technology Economically Achievable ("BAT") and the Best Conventional Treatment Technology ("BCT") and to comply with the Storm Water Permit's Receiving Water Limitations.

15. <u>Prevent Run-On from Nu-Way Roll-Off Bin Wash Area</u>. By December 1, 2017, Defendant shall design and implement a berm or similar structural measure to separate the Nu-Way roll-off bin wash area from the Facility in order to prevent run-on from the Nu-Way roll-off bin wash area into the Facility.

16. <u>Roll-off Bins and Dumpsters</u>: Within forty-five (45) days of the Effective Date, Defendant shall tarp roll-off bins and smaller wheeled dumpsters that do not have covers and/or that currently leak prior to the start of any forecasted precipitation with a probability of 50% or more.

**B.** **<u>Storm Water Sampling of Discharge Locations</u>.**

17. <u>Monrovia Storm Water Sample Locations</u>. Samples will be collected from the current storm water discharge locations at the Monrovia Facility, ("Monrovia Facility Discharge Location(s)"), which is identified as Outfall #1 with corresponding drainage area on **<u>Exhibit A</u>**.

18. <u>Sampling</u>. The following storm water monitoring procedures shall be implemented at the Monrovia Facility:

18.1. <u>Frequency</u>. During the term of this Consent Decree, Defendant shall collect samples from the Monrovia Facility Discharge Location(s) and in the event that discharges occur at the Monrovia Facility during scheduled facility operating hours from at least four (4) qualified storm events pursuant to the Storm Water Permit. A "qualified storm event" is a storm event that produces a discharge from at least one (1) drainage area and is preceded by forty-eight (48) hours with no discharge from any drainage area. If, prior to March 1, Defendant has collected samples from two (2) or fewer qualified storm events,

Defendant shall sample at least two (2) non-qualified storm events during operating hours. To satisfy the requirements of this Consent Decree, samples collected during non-qualified storm events must have been collected during storm events that occurred at least three working (3) days apart. Samples from non-qualified storm events must be collected within the first four (4) hours after rain begins or the Facility begins operation in the event the rain begins prior to operating hours.

18.2. <u>Contained or Stored Storm Water</u>. To the extent industrial storm water is stored or contained at the Monrovia Facility, Defendant shall sample the stored or contained water before it is released, even if the release is not during operating hours.

18.3. <u>Parameters</u>. Defendant shall analyze each storm water sample collected for the contaminants set forth in the Table 1.

18.4. <u>Laboratory</u>. A laboratory accredited by the State of California shall analyze all samples collected pursuant to this Consent Decree.

18.5. <u>Detection Limits</u>. The laboratory shall use analytical methods adequate to detect the individual contaminants at or below Table 1 Numeric Limits.

18.6. <u>Hold Time</u>. All samples shall be delivered to the laboratory as necessary to ensure that sample "hold time" is not exceeded for each contaminant sampled. For field measurements, such as pH, Defendant shall follow the requirements set forth in the General Permit.

18.7. <u>Concentrations</u>. Defendant shall request that all sample results for metals be reported by the laboratory in both total and dissolved concentrations as necessary to provide for comparison to limits in

Table 1.

18.8.   <u>Reporting</u>. Defendant shall provide Waterkeeper with the complete laboratory results, including a copy of the Quality Assurance/Quality Control and the laboratory report for all storm water samples collected within ten (10) business days of receiving the results.

18.9.   <u>Sampling Reduction</u>. Defendant can discontinue storm water sample analysis of a parameter listed in Table 1 if (1) the concentration of the parameter does not exceed the Table 1 Numeric Limit in at least four (4) consecutive storm water samples collected from qualified storm events for two (2) Reporting Years, and (2) Defendant certifies that the parameter is not used or associated with its industrial activity. Defendant shall contact Plaintiff at least thirty (30) days prior to discontinuing analysis for any required parameter by providing a written explanation for its decision and all relevant laboratory reports and supporting documentation.

**C.      <u>Reduction of Pollutants in Discharges</u>.**

19.   <u>Contaminant Reduction</u>. Defendant shall develop and implement BMPs to reduce potential pollutants in storm water at the Monrovia Facility to levels below those in Table 1 ("Numeric Limits"). As of the Effective Date, and for the remainder of the term of this Consent Decree, if storm water samples collected demonstrate an exceedance of any two (2) Table 1 Numeric Limits in a single Reporting Year for a particular drainage area, Defendant shall comply with the action plan requirements set forth below for solely the drainage area(s) draining to the sample location(s) where the exceedances occurred.

**Table 1 Numeric Limits**

| Contaminant | Values Applicable to Storm Water Discharges |
|---|---|
| Total Suspended Solids | 100 mg/L |
| Total Recoverable Zinc | 0.20 mg/L |
| Oil and Grease | 15 mg/L |
| Total Recoverable Aluminum | 0.750 mg/L |
| Total Recoverable Iron | 1.0 mg/L |
| Total Recoverable Copper | 0.0253 mg/L |
| Total Recoverable Lead | 0.069 mg/L |
| Chemical Oxygen Demand ("COD") | 120 mg/L |
| pH | 6.0-9.0 s.u. |

20.    Action Plan for Table 1 Exceedances. Beginning with the 2017-2018 Reporting Year, if an action plan is required at the Monrovia Facility pursuant to paragraph 19, Defendant shall submit a plan to Plaintiff for reducing and/or eliminating the discharge of pollutants designed to achieve the Table 1 Numeric Limits ("Action Plan"). Each required Action Plan shall be submitted by July 30 following Reporting Year during which the numeric value exceedance(s) occurs.

20.1.    Action Plan Requirements. An Action Plan shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the numeric value(s) listed in Table 1; (2) an assessment of the source of each contaminant discharged in excess of the numeric value(s); (3) the identification of additional BMPs, including to reduce or prevent the exposure of potential pollutant(s) and pollutant sources in order to reduce pollutant concentrations to those below Table 1 Numeric Limits; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as practicable but at

least by October 1 unless the Settling Parties agree on a later date based on the time needed to design, procure, and install the necessary equipment or implementation within the required time period is not possible due to Force Majeure, as defined in paragraph 46 below. Waterkeeper will not unreasonably delay or withhold agreement to extend the deadline, as needed. Any dispute(s) over the deadline for implementation of additional BMPs identified in an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

21.    Plaintiff shall have 30 days upon receipt of Defendant's Action Plan to provide Defendant with comments. Defendant shall revise its SWPPP and/or Monitoring & Reporting Plan ("M&RP") as applicable within thirty (30) days of receipt of Plaintiff's Action Plan comments to reflect the changes and/or additional BMPs as set forth in the Action Plan or shall justify in writing why any comment is not incorporated. Any disputes as to the adequacy of the Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Defendant shall notify Waterkeeper in writing when the Action Plan has been completely implemented, and the SWPPP and/or M&RP have been revised. Defendant shall submit the revised SWPPP and/or M&RP to Waterkeeper for review as set forth in subparagraph 27.7 below.

**D.    Visual Observations.**

22.    All visual observations of the Monrovia Facility shall be conducted in accordance with the terms of the Storm Water Permit and this Consent Decree, and shall include at least the following:

22.1.    Storm Water Discharge Observations. During the term of this Consent Decree, Defendant shall conduct visual observations at the same time sampling occurs.

1

     22.2.   <u>Non-Storm Water Discharge Observations</u>. During the term of this

2

             Consent Decree, Defendant shall conduct monthly non-storm water

3

             visual observations at the Monrovia Facility Discharge Location(s).

4

    23.    Defendant shall maintain logs of the visual observations of the Monrovia

5

Facility required by this Consent Decree and the Storm Water Permit, which shall be

6

made available to Plaintiff within fifteen (15) days if requested by Plaintiff.

7

   **E.**     **<u>Employee Training</u>.**

8

    24.    Within sixty (60) days of the Effective Date, Defendant shall conduct

9

training for employees/workers who have responsibility at the Monrovia Facility for the

10

implementation of any portion of the SWPPP, M&RP, or compliance with other terms of

11

the Storm Water Permit or Consent Decree. The training program shall include use of

12

written training materials needed for effective implementation of the training program.

13

Defendant shall also ensure that there are a sufficient number of employees assigned to

14

implement the BMPs and conduct other compliance activities required by the Storm

15

Water Permit and this Consent Decree, and that these employees are properly trained to

16

perform the required activities. The training program shall cover the topics below.

17

     24.1.   <u>Non-Storm Water Discharge Training</u>. The training program shall

18

             include training of employees on the Storm Water Permit's

19

             prohibition of non-storm water discharges, so that employees know

20

             what non-storm water discharges are, which can result from improper

21

             practices that may produce non-storm water discharges, and how to

22

             detect and prevent them.

23

     24.2.   <u>BMP Training</u>. The training program shall include training of

24

             employees on BMP implementation and maintenance to ensure that

25

             BMPs are implemented effectively to prevent or reduce the exposure

26

             of potential pollutants to storm water and to ensure the proper

27

             implementation of BMPs at the Monrovia Facility.

28

24.3. <u>Sampling Training</u>. The training program shall include training of an adequate number of employees to ensure the collection of storm water samples as required by this Consent Decree and/or the Storm Water Permit, and include training on the proper sampling protocols and chain of custody requirements to ensure storm water samples are properly collected, stored, and submitted to a certified laboratory.

24.4. <u>Visual Observation Training</u>. The training program shall include training of all individuals performing visual observations at the Monrovia Facility pursuant to this Consent Decree and/or the Storm Water Permit that includes when visual observations are required, the different types of visual observations required, and instruction on proper record keeping under the Storm Water Permit.

25. Training shall be provided on an annual basis, or as otherwise required to ensure compliance with the terms of this Consent Decree, by a private consultant or a representative of Defendant who is familiar with the requirements of this Consent Decree and the Storm Water Permit. The training shall be repeated as necessary to ensure that employees are familiar with the requirements of this Consent Decree, the Storm Water Permit, and the Monrovia Facility SWPPP and M&RP, as appropriate to the particular employee's job descriptions. Any new employee at the Monrovia Facility who is responsible for implementation of any portion of the SWPPP, the M&RP, or compliance with other terms of the Storm Water Permit or Consent Decree shall receive training within sixty (60) days after being hired, or before being responsible for compliance with the terms of the Storm Water Permit or Consent Decree.

26. Defendant shall maintain training records to document compliance with Section III.E of this Consent Decree, and shall make these records available for Plaintiff's review at the Monrovia Facility. The Training Program shall be specified in the SWPPP and Defendant shall modify the SWPPP as necessary to reflect the training

program required by this Consent Decree.

**F.    Storm Water Pollution Prevention Plan and Monitoring and Reporting Plan.**

27.    Within sixty (60) days of the Effective Date of this Consent Decree, Defendant shall revise the Monrovia Facility SWPPP and/or M&RP as applicable to include:

27.1.    All BMPs that are currently utilized at the respective facility;

27.2.    All BMPs identified and developed pursuant to this Consent Decree and/or the Storm Water Permit;

27.3.    The specific position responsible for compliance with the Storm Water Permit and this Consent Decree, including specifying which individual is responsible for each area of compliance (e.g., Operations Manager, collecting samples);

27.4.    A detailed site map that includes at a minimum all information required by the Storm Water Permit and this Consent Decree;

27.5.    A description of each industrial activity, all potential pollutant sources, and each potential pollutant associated with each industrial activity and/or pollutant source;

27.6.    Incorporate the requirements of the Storm Water Permit and this Consent Decree.

27.7.    Defendant shall submit the revised SWPPP and/or M&RP to Plaintiff for review and comment within ten (10) business days of completion of the SWPPP and/or M&RP. Plaintiff shall provide comments, if any, to Defendant within thirty (30) days of receipt of the revised SWPPP and M&RP. Within thirty (30) days of receiving comments from Plaintiff, Defendant shall incorporate Plaintiff's comments into the revised SWPPP and/or M&RP or shall justify in writing why any comment is not incorporated. Any disputes as to the adequacy of the

SWPPP and/or M&RP shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

28.     Additional and Ongoing Revisions to SWPPP and/or M&RP. Defendant shall revise the SWPPP and/or M&RP pursuant to the Storm Water Permit, including if there are any changes in the Monrovia Facility operations that may possibly affect the quality of storm water discharges, including but not limited to changes to storm water drainage area(s), discharge points, and/or sample location(s), or changes or additions to the BMPs resulting from an Action Plan. Defendant shall submit any revised SWPPP and/or M&RP to Plaintiff for review and comment if a significant revision has been made e.g., change or reduction of industrial discharge points, implementation of advanced BMPs, etc. consistent with the terms and timelines of subparagraph 27.7 above. Defendant shall notify Plaintiff when the revised SWPPP and/or M&RP is uploaded to SMARTS.

**G.      Compliance Monitoring and Reporting.**

29.     Site Inspections. Each Reporting Year for the term of this Consent Decree, Plaintiff and its representatives may conduct up to one (1) noticed site inspections per Wet Season and, one (1) dry weather inspection (for a total of two (2) inspections per Reporting Year), plus an additional inspection if there is a dispute regarding compliance with the terms of this Consent Decree, at the Monrovia Facility. Each site inspection shall occur during normal business hours (weekends and holidays excluded, even if open for business, and Plaintiff shall provide Defendant with three (3) business days notice of an intended inspection. If a Wet Season inspection is noticed, Plaintiff will continue to follow the weather forecast, and will confirm the Wet Season inspection at least twenty-four (24) hours prior to the start of the inspection in an effort to ensure Plaintiff catches a rain event producing a discharge during the inspection. During inspections, Plaintiff's representatives must wear safety goggles, hard hats, vests, and appropriate clothing and

footwear and remain in the presence of Defendant's representatives at all times. Prior to conducting the inspection, all of Plaintiff's representatives who will participate in the site inspection agree to execute the Assumption of Risk, Release, and Indemnity Agreement attached as **<u>Exhibit B</u>** prior to entering the Monrovia Facility. Plaintiff also agrees that all individuals who will participate in the inspection will sign a sign-in sheet when they arrive at the Facility.

30.     During the site inspection, Plaintiff and/or its representatives shall be allowed access to the SWPPP, M&RP, and other non-privileged records including monitoring records, reports, and sampling data for the Monrovia Facility, as appropriate. In addition, during the site inspection, Plaintiff and/or its representatives may collect samples of storm water discharges from the Monrovia Facility Discharge Location(s) indicated on **<u>Exhibit A</u>**. Plaintiff will provide split samples to Defendant upon request. Payment for laboratory results for split samples shall be the sole responsibility of Defendant. Any samples collected by Plaintiff shall be submitted to a certified California laboratory for analysis in accordance with the provisions of subparagraphs 18.4-18.6 of this Consent Decree and in accordance with the Storm Water Permit. Copies of the complete laboratory reports shall be provided to Defendant within five (5) business days of receipt.

31.     <u>Compliance Monitoring and Oversight</u>. In a separate agreement resolving related Case No. 16-cv-7769-R (ASx), Defendant agreed to pay Plaintiff a total of Twelve Thousand Dollars ($12,000.00) towards partial reimbursement to Plaintiff for its investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred to monitor Defendant's compliance with this Consent Decree, and the separate Consent Decree resolving related Case No. 16-cv-7769-R (ASx).

32.     <u>Action Plan Payments</u>. Defendant shall pay Three Thousand Dollars ($3,000) each time an Action Plan is submitted to Waterkeeper. Payments shall be submitted simultaneously with the submittal of the Action Plan. Payments shall be made

payable to "Los Angeles Waterkeeper" and addressed to: Los Angeles Waterkeeper, 120 Broadway, Suite 105, Santa Monica, CA 90401. Failure to submit a payment as required under this paragraph will constitute a breach of the Consent Decree.

33.     <u>Reporting and Documents</u>. During the term of this Consent Decree, Defendant shall notify Plaintiff within fifteen (15) days after it uploads to SMARTS any document related to storm water quality at the Monrovia Facility. Defendant shall copy Plaintiff on its submittal of any document that is not uploaded via SMARTS that is related to storm water quality to any State or local agency or municipality. Any correspondence related to Defendant's compliance with the Storm Water Permit or storm water quality received by Defendant from any regulatory agency, State or local agency, county or municipality shall be provided to Plaintiff within ten (10) business days of receipt by Defendant. Defendant shall submit monthly visual observations and sampling event visual observations that are required to be kept by the Storm Water Permit to Waterkeeper by July 30.

**H.     <u>Environmental Project, Litigation Fees and Costs, Stipulated Payments and Interest.</u>**

34.     <u>Environmental Mitigation Project</u>. In a separate Consent Decree resolving related Case No. 16-cv-7769-R (ASx), Defendant agreed to pay One Hundred Thousand Dollars ($100,000.00) to the Rose Foundation for Communities and the Environment to be used to fund environmental project activities that will benefit the Southern California Bight ("Environmental Project Payment"). The Settling Parties agree that the Environmental Project Payment in related Case No. 16-cv-7769-R (ASx) represents an aggregate payment in response to environmental harms alleged in both the Complaint and the related Case No. 16-cv-7769-R (ASx) involving the Settling Parties.

35.     <u>Payment of Waterkeeper's Litigation Costs</u>. In a separate Consent Decree resolving related Case No. 16-cv-7769-R (ASx), Defendant agreed to pay a total of Two Hundred Thousand Dollars ($200,000.00) to Los Angeles Waterkeeper to partially reimburse it for its investigation fees and costs, expert/consultant fees and costs,

reasonable attorneys' fees, and other costs incurred as a result of investigating and preparing and negotiating a resolution of this matter, and the matter covered in the related Case No. 16-cv-7769-R (ASx).

## IV. DISPUTE RESOLUTION

36.     Until this Consent Decree terminates, this Court shall retain jurisdiction over this matter for the purposes of implementing and enforcing the terms and conditions of this Consent Decree, and adjudicating all disputes among the Settling Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

37.     <u>Meet and Confer</u>. A Party to this Consent Decree shall invoke the dispute resolution procedures of this Section by notifying all Settling Parties in writing of the matter(s) in dispute. The Settling Parties shall then meet and confer in good faith (either telephonically or in person) in an attempt to resolve the dispute informally over a period of twenty (20) calendar days from the date of the notice (the "Meet and Confer Period").

38.     If the Settling Parties cannot resolve a dispute by the end of Meet and Confer Period, the Party initiating the dispute resolution provision may invoke formal dispute resolution by filing a motion before the United States District Court for the Central District of California.

39.     Litigation costs and fees incurred in conducting meet and confer or otherwise addressing and/or resolving any dispute, including an alleged breach of this Consent Decree, shall be awarded in accordance with the standards in the Clean Water Act, Rule 11 of the Federal Rules of Civil Procedure, or any other legal authority, and applicable case law interpreting such provisions.

## V. RELEASE OF LIABILITY

40.     <u>Waterkeeper's Release</u>. Upon the Effective Date of this Consent Decree, Waterkeeper, on its own behalf and on behalf of its current and former officers, directors,

employees, parents, subsidiaries, and affiliates, and each of their successors and assigns, and their agents, attorneys, and other representatives releases all persons including, without limitation, Defendant and Cedarwood, and each of their current and former officers, directors, members, employees, shareholders and each of their predecessors, successors and assigns, and each of their agents, attorneys, consultants, and other representatives from, and waives all claims which arise from or pertain to or which could have been asserted in, the Notice Letters, the Complaint, and this action, including all claims for injunctive relief, damages, penalties, fines, sanctions, mitigation, fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed up to and including the Termination Date of this Consent Decree, except as provided in paragraph 39 in the event of dispute regarding compliance with this Consent Decree.

41.     <u>Allan Co's Release of Waterkeeper</u>. Upon the Effective Date of this Consent Decree, Allan Co, on its own behalf and on behalf of its current and former officers, directors, employees, and each of their successors and assigns, and their agents, attorneys, and other representatives releases Waterkeeper (and its current and former officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns, and its agents, attorneys, and other representatives) from, and waives all claims which arise from or pertain to or which could have been asserted in, this action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed or which could have been claimed up to and including the Termination Date of this Consent Decree, except as provided in paragraph 39 in the event of dispute regarding compliance with this Consent Decree.

42.     This Consent Decree extends to and includes any and all claims, liabilities, injuries, damages, and causes of action that Settling Parties do not presently anticipate, know, or suspect to exist, but that may develop, accrue, or be discovered in the future.

Each Settling Party, on its own behalf and on behalf of the others bound by the releases referenced above, expressly waives all rights or benefits under Section 1542 of the California Civil Code and any similar rule or statute in any jurisdiction. Section 1542 provides:

**A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing a release which, if known by him or her, must have materially affected his or her settlement with the debtor.**

Each Settling Party represents and warrants that, in negotiating and entering into this Consent Decree, it is relying solely upon its own investigation, knowledge, information, belief, and judgment, and upon the advice of its own attorney, and not upon any statements, opinions, or representations of any other parties or their attorneys, employees, or agents.

43.     Upon Court approval and entry of this Consent Decree, Plaintiff shall promptly dismiss with prejudice the Complaint against Defendant, however, the Court shall retain jurisdiction over this matter in accordance with paragraph 5, above.

44.     Nothing in this Consent Decree limits or otherwise affects either Settling Party's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any other matter relating to storm water discharges from the Monrovia Facility.

## VI.     MISCELLANEOUS PROVISIONS

45.     <u>No Admission of Liability; Reservation of Rights</u>. This Consent Decree is executed pursuant to a compromise and settlement entered into by the Settling Parties without any admission of liability to each other, but solely for the purpose of avoiding costly litigation on disputed claims and avoiding further uncertainty, controversy and legal expense. Without limiting the foregoing, neither this Consent Decree nor any consideration given by any Party therefor nor anything contained in this Consent Decree shall constitute, or be taken or construed to be, an inference, admission, finding,

adjudication, or acknowledgement of any fact, law, liability, violation of any law, rule, or regulation, or as evidencing or indicating in any degree the truth or correctness of any claims asserted in the Complaint or Notice Letters or defenses which could have been asserted in the action. Neither this Consent Decree, the implementation of additional BMPs, nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, admission, or acknowledgment of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendant maintains and reserves all rights, claims, and defenses it may have in connection with any and all alleged violations that may be raised in the future.

46.  <u>Force Majeure</u>. A Force Majeure event is any circumstances beyond the Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, or natural catastrophe; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency (subject to the terms in subparagraph 46.1 below) or change in applicable laws, rules, and regulations. Force Majeure shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence or misconduct. Any Party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Settling Parties shall exercise due diligence to resolve and remove any force majeure event.

46.1.  In the case of governmental permits, consents, and approvals required for structural BMPs, Defendant shall diligently file and pursue required applications for such permits, consents, and approvals for the structural BMPs described in this Consent Decree, and shall diligently pursue the procurement of contractors, labor and materials to complete

all such BMPs by the deadlines set forth herein, and shall use reasonable good faith efforts to meet these deadlines. Defendant shall be excused from meeting the deadlines in this Consent Decree for a specific BMP if circumstances beyond the reasonable control of Defendant as well as delays in obtaining any required governmental permits, consents, or approvals due to the permitting agency's actions or inactions or delays associated with the fabrication and/or construction of materials and structural BMPs prevent the attainment of the deadline for a specific BMP. Such delays may be excused if all of the following requirements are met: 1) Defendant has notified Waterkeeper via email and first class mail within ten (10) business days of first learning about the anticipated delay; and 2) Defendant continues to exercise due diligence and reasonable good faith efforts in pursuing the permitting and implementation of the BMP in question and proposes a reasonable revised deadline. Any excused delay shall not excuse Defendant from implementing its other, unexcused obligations under this Consent Decree.

47. <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Storm Water Permit, the Clean Water Act, or specifically herein.

48. <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

49. <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

50. <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by overnight mail, or via electronic mail,

with email confirmation of receipt by the receiving party, to the following individuals:

If to Plaintiff:

Bruce Reznik, Executive Director
        Bruce@lawaterkeeper.org
Los Angeles Waterkeeper
120 Broadway, Suite 105
Santa Monica, California 90401


With copies to:

Drev Hunt
        Drev@lawyersforcleanwater.com
Lawyers for Clean Water, Inc.
1004-A O'Reilly Avenue
San Francisco, California 94129

If to Defendant:

Jason A. Young, CEO
        jyoung@allancompany.com
Allan Company
14620 Joanbridge Street
Baldwin Park, California 91706


With copies to:


William Funderburk
        wfunderburk@candffirm.com
Castellón & Funderburk LLP
811 Wilshire Boulevard, Suite 1025
Los Angeles, California 90017

and

Nenad Trifunovic, General Counsel
        ntrifunovic@allancompany.com
Allan Company
14620 Joanbridge Street
Baldwin Park, California 91706

Electronically transmitted documents shall be deemed submitted on the date of the electronic transmission. Any change of address or addresses shall be communicated in the manner described above for giving notices.

51.     Effect of Consent Decree. Except as provided herein, Plaintiff does not, by its consent to this Consent Decree, warrant or aver in any manner that Defendant's compliance with this Consent Decree will constitute or result in compliance with any Federal or State law or regulation. Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of each Settling Party to comply with all Federal, State, and local laws and regulations governing any activity required by this Consent Decree.

52.     Counterparts. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy, email of a .pdf signature, and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

53.     Modification of the Consent Decree. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Settling Parties.

54.     Full Settlement. This Consent Decree constitutes a full and final settlement of this matter.

55.     Integration Clause. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Settling Parties and expressly supersedes any and all prior oral or written agreements covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

56.     Authority. The undersigned representatives for Plaintiff and Defendant each certify that he/she is fully authorized by the Party whom he/she represents to enter into the terms and conditions of this Consent Decree.

57.     The provisions of this Consent Decree apply to and bind the Settling Parties, including any successors or assigns. The Settling Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Settling Parties, and to legally bind the Settling Parties to its terms.

58.     The Settling Parties agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms. By entering into this Consent Decree, the Defendant does not admit liability for any purpose as to any allegation or matter arising out of this Action.

{signatures follow}

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO FORM                     LAWYERS FOR CLEAN WATER, INC.


Dated: <u>September 5</u>, 2017          By:  _____/s/_____
                                              Drevet Hunt
                                              Attorneys for Plaintiff

                                         CASTELLÓN & FUNDERBURK LLP


Dated: <u>September 5</u>, 2017          By: _____/s/_____
                                              William Funderburk
                                              Attorneys for Defendant

APPROVED AS TO CONTENT


Dated: <u>September 1</u>, 2017          By: _____/s/_____
                                              Bruce Reznik
                                              Los Angeles Waterkeeper


Dated: <u>September 2</u>, 2017          By: _____/s/_____
                                              Stephen A. Young
                                              Allan Company, Inc.

**IT IS SO ORDERED.**


Date: <u>November 9, 2017</u>
                                         _____
                                         Honorable Manuel L. Real
                                         United States District Court Judge
                                         Central District of California